UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE CARRANZA,<br>Plaintiff,<br>vs.<br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br>Defendant. | Case No. CV 13-3901-JPR<br><br>MEMORANDUM OPINION AND ORDER AFFIRMING COMMISSIONER |

**I. PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed February 12, 2014, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is affirmed and this action is dismissed.

**II. BACKGROUND**

Plaintiff was born on August 25, 1978. (Administrative Record ("AR") 42, 125.) She completed eighth grade and worked as a babysitter and receptionist. (See AR 43, 191.)

On March 26, 2010, Plaintiff filed applications for DIB and SSI. (See AR 122-37, 188-95.) She alleged that she had been unable to work since July 1, 2009, because of severe bipolar disorder and depression. (See AR 189.) After her applications were denied initially and upon reconsideration, she requested a hearing before an ALJ. (AR 108-10.) A hearing was held on June 7, 2011, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert ("VE"). (AR 42-77.) In a written decision issued September 21, 2011, the ALJ determined that Plaintiff was not disabled. (AR 38.) On December 22, 2012, the Appeals Council denied her request for review. (AR 4-10.) This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.

Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

**IV. THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe"

impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform her past work; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That determination

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations. §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

comprises the fifth and final step in the sequential analysis. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B. The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since the alleged onset date, July 1, 2009. (AR 19.) At step two, he concluded that Plaintiff had severe impairments of mood disorder, not otherwise specified, polysubstance abuse, and localized left-knee osteoarthritis, status-post left total knee replacement. (Id.) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a Listing. (AR 19-20.)

At step four, the ALJ found that Plaintiff retained the RFC to perform "light work,"[2] with some additional limitations. Specifically, the ALJ determined that

> she can exert up to twenty pounds of force occasionally and/or up to ten pounds of force frequently and/or a negligible amount of force constantly to move objects. The claimant can stand and walk up to six hours and sit up to six hours in an eight-hour workday with normal breaks. She can perform work that does not require

---

[2] "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." §§ 404.1567(b), 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." §§ 404.1567(b), 416.967(b). A person who can do light work can generally also do sedentary work. §§ 404.1567(b), 416.967(b).

> climbing ladders, ropes, or scaffolds, and no more than occasional climbing of ramps or stairs, kneeling, crouching, or crawling. The claimant can perform work that does not require concentrated exposure to extreme cold and is limited to the performance of simple, routine, and repetitive tasks in a job that does not require interaction with the general public (excluding babysitting), and no more than occasional interaction with coworkers.

(AR 20-21.) Based upon the VE's testimony, the ALJ determined that Plaintiff could still perform her past relevant work as a child monitor. (AR 25.) In the alternative, he found that she could perform other jobs that exist in significant numbers in the national economy, identifying both light and sedentary positions. (See AR 26-28.) He therefore found that she was not disabled. (AR 28.)

## V. DISCUSSION

Plaintiff contends that the ALJ erred in assessing the opinion of her treating psychiatrist, Dr. Herminio Academia. (J. Stip. at 5.)

### The ALJ Did Not Err in Giving Little Weight to Dr. Academia's Opinion

#### A. Applicable law

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff. Lester, 81 F.3d at 830. A treating physician's opinion is generally entitled to

more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician. Id.

This is true because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight. §§ 404.1527(c)(2), 416.927(c)(2).

When a treating doctor's opinion is not contradicted by another doctor's, it may be rejected only for clear and convincing reasons. Lester, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor's, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record for rejecting the opinion of the treating doctor. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). The ALJ need not, however, accept the opinion of any physician, including a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2001); accord Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).

B. Relevant background

On February 14, 2011, Dr. Academia, of Augustus Hawkins Mental Health Center in Los Angeles, completed a Mental Work Restriction Questionnaire. (AR 316-17.) He noted that he had

been treating Plaintiff since September 24, 2009, for mood swings, depression, and poor concentration. (Id.) Dr. Academia checked boxes indicating that Plaintiff had moderate limitations in understanding, remembering, and carrying out short, simple instructions; maintaining attention for two-hour segments; maintaining regular attendance and punctuality; sustaining an ordinary routine without special supervision; making simple, work-related decisions; asking simple questions and requesting assistance; and being aware of normal hazards and taking appropriate precautions. (AR 316-17.) He found she had marked limitations in remembering worklike procedures; working with or close to others without being distracted by them; completing a normal workday without interruptions from psychological symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers without distracting them or exhibiting behavioral extremes;[3] and responding appropriately to changes in work setting. (Id.) Dr. Academia noted Plaintiff's prescription medications and deemed her prognosis to be guarded. (AR 371.)

Dr. Academia attached to the questionnaire an Evaluation Form for Mental Disorders, completed February 3, 2011. (AR 319-22.) He indicated that Plaintiff was seen monthly and noted that

---

[3] Plaintiff testified that her "problem" being around other people had been "pretty much the same" her whole life. (AR 71.) As the ALJ noted, nothing in the record demonstrated that Plaintiff's mood disorder had gotten worse "on or about the alleged onset date," before which she worked as a receptionist and held other jobs interacting with people. (AR 24.)

she was able to attend appointments, exhibited a steady gait and erect posture, and was groomed "within standard." (AR 319.) Dr. Academia recorded her reports of mood swings, violence, paranoia, anger, and inability to concentrate. (Id.) He noted that she had been diagnosed with attention deficit disorder, but not when or by whom, and that she had not been hospitalized for psychiatric treatment.[4] (Id.)

Dr. Academia noted Plaintiff's reports of her parents' frequent fighting, abandonment by her mother, sexual abuse by a cousin, poor performance in school, and previous work as a receptionist. (Id.) He noted that Plaintiff had four children,[5] her boyfriend was in prison, and she had previously been imprisoned for welfare fraud. (Id.)

Dr. Academia described Plaintiff as withdrawn, with blunted and depressed affect, low energy, and a negative and unmotivated attitude toward work. (AR 320.) He noted her reports that she talks to herself and becomes paranoid. (Id.) He did not assess Plaintiff's cognitive function. (Id.)

Dr. Academia noted Plaintiff's report that she took care of

---

[4] Although Plaintiff denied inpatient psychiatric treatment in her initial assessment at Augustus Hawkins (AR 252), she reported to the consultative examiner that she was hospitalized for a few days in 2002 for depression (AR 258). Plaintiff also "denie[d] using drugs" during her initial assessment for Dr. Academia. (AR 244.) Similarly, in June 2009, she "denie[d] alcohol use/abuse." (AR 251.) As discussed infra, neither of those statements was true.

[5] Most recent records – including Plaintiff's disability applications – indicate that she has four children. (See, e.g., AR 126, 148, 254.) At the hearing, however, Plaintiff claimed to have five, with the youngest being six years old. (AR 43-46.)

her children and did household chores with some help from her roommate. (AR 321.) Plaintiff reported that she did not socialize and had difficulty with concentration and memory. (Id.) Dr. Academia stated that Plaintiff would "resist all efforts to return her to work consciously & unconsciously."[6] (Id.) He noted, however, that he "ha[d] not actually seen the patient at work and could not comment accurately about [her] job performance." (AR 322.) He stated that Plaintiff could manage her own funds. (Id.)

Dr. Academia assessed bipolar disorder I with psychotic features and noted that Plaintiff was being treated with prescription medication. (Id.)

C. Analysis

Contrary to Plaintiff's contention (J. Stip. at 5), the ALJ gave specific, legitimate reasons based on substantial evidence for affording Dr. Academia's assessment "less weight" (AR 24); see Molina, 674 F.3d at 1111. First, the ALJ noted that Dr. Academia's opinion that Plaintiff suffered some marked work-related limitations was based on only "limited contact with Plaintiff." (AR 24.) More specifically, he noted that Dr. Academia's record of treatment "consist[ed] only of cursory notes and a prescription chart" and did not support his extreme findings. (Id.); Batson, 359 F.3d at 1195 & n.3 (holding ALJ properly discounted treating doctor's opinion when unsupported by his treatment notes). Although records from Augustus Hawkins

---

[6] Later that year, however, after her knee surgery, Plaintiff was noted to be "happier" and wanted to "begin training program so she can return to work." (AR 534.)

reflect Plaintiff's regular visits, she appears to have seen Dr. Academia only for "Brief Medication Visit[s]," during which he continued or adjusted her prescriptions (see, e.g., AR 236, 238, 239, 241, 243, 285, 288-91), meeting with social workers the rest of the time to work on coping skills (see, e.g., AR 235, 237, 240, 242, 286, 292). Indeed, Dr. Academia's evaluation form states that Plaintiff was seen "every month" but does not specify by whom. (AR 319.) The ALJ properly considered the nature and extent of Plaintiff's relationship with Dr. Academia in assessing the doctor's opinion. See §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii).

Moreover, Dr. Academia's records of Plaintiff's "Brief Medication Visit[s]" reflect little medical assessment. Other than his brief "Mental Status" report based on Plaintiff's appearance, affect, and mood (see, e.g., AR 285 (noting that Plaintiff "appears depressed" and her "affect is blunt"); AR 288 (noting Plaintiff to be "casually dressed, calm, [and] cooperative", with "stable" "mood"); AR 289 (noting Plaintiff to be "casually dressed," with "good eye contact" and "coherent" "speech")), the records focus on Plaintiff's own reports of her symptoms, level of compliance, and the effects of medication and note any adjustments to her medication. The ALJ reasonably found that these "cursory" treatment notes, which are devoid of evidence of clinical or diagnostic testing, were inadequate to support the extreme findings Dr. Academia reported in the questionnaire. AR 24; see §§ 404.1527(c)(3), 416.927(c)(3); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating doctor's opinion properly rejected when treatment notes "provide

no basis for the functional restrictions he opined should be imposed on [claimant]”); Batson, 359 F.3d at 1195 (“an ALJ may discredit treating physicians’ opinions that are conclusory, brief, and unsupported . . . by objective medical findings”). Indeed, Dr. Academia’s responses on the evaluation itself reflected largely what “patient reports” about her ability to function (see AR 319-20), and he explicitly disclaimed the ability to accurately assess Plaintiff’s work function (AR 322), undermining his assessment of her moderate to marked limitations in carrying on workplace activities (AR 316-17). The ALJ thus reasonably found that Dr. Academia’s treatment notes did not support his assessment of Plaintiff’s work restrictions, which was a legitimate reason to discount his opinion. See also Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ permissibly rejected treating physician’s opinion when opinion was inconsistent with treatment reports).

The ALJ not only found Dr. Academia’s assessment of Plaintiff’s “moderate to marked limitations in all areas of functioning” to be unsupported by his own treatment records, he also found it to be “patently inconsistent with the objective medical evidence” as a whole, the second reason he gave for discounting it.[7] (AR 24.) As the ALJ noted, although

[7] Plaintiff claims that the ALJ’s finding that Dr. Academia’s opinion was inconsistent with the medical evidence “without more does not rise to the required level of articulation” of specific and legitimate reasons, citing Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). (J. Stip. at 10.) In Embrey, the ALJ rejected a treating doctor’s “detailed assessment” of the claimant’s functional capacity – an assessment confirmed by three other physicians – by merely “list[ing] seriatim” and without citation the purportedly inconsistent

Plaintiff's treatment record at Augustus Hawkins reflected her subjective complaints of mood swings, frustration, intermittent auditory hallucinations, and poor concentration (AR 22; see, e.g., AR 237 (frustration), 240 (mood swings), 285 (mood swings, auditory hallucinations, anxiety attacks, poor concentration)), there was no objective evidence of disorientation, psychosis, or thought disorder, and her Mental Status Exam showed "significant cognitive and intellectual functioning" (AR 22; see AR 260-61). The ALJ further noted that Plaintiff was consistently cooperative, well-groomed, and appropriate at counseling sessions (AR 22; see, e.g., AR 235, 240, 242 (cooperative and willing), 230, 238-40 (well-groomed), 230, 238, 241, 289-90 (good eye contact), 238-39, 241, 289-90 (coherent speech), 238 (calm); see also AR 237 (Plaintiff expressing importance and difficulty of controlling her emotions), 286 (Plaintiff requesting changes to therapy to enable her to improve)), and she was given a Global Assessment Functioning ("GAF") score of 55 (AR 22; see AR 256), consistent with only moderate symptoms or functional difficulties (AR 22).[8] Plaintiff confirmed that medication improved her

---

objective factors. See id. at 421-22. Here, by contrast, the ALJ did "more": he met his burden to articulate specific, legitimate reasons for discounting Dr. Academia's outlier opinion "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Thomas, 278 F.3d at 957 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)); see AR 22-23.

[8] A GAF score of 51 to 60 indicates either moderate symptoms or moderate difficulty in social, occupational, or school functioning. See Diagnostic and Statistical Manual of Mental Disorders 34 (revised 4th ed. 2000). The Commissioner has declined to endorse GAF scores, Fed. Reg. 50764-65 (Aug. 21,

symptoms, particularly once she switched from Seroquel to Paxil and Geodon.[9] (See, e.g., AR 49, 236); cf. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that claimant's response to conservative treatment undermined his reports of disabling symptoms).

Although the ALJ noted that Plaintiff occasionally experienced more exaggerated symptoms, the record reflected that those incidents occurred in the context of substance abuse[10] and acute psychosocial stressors (see AR 235 (Plaintiff reporting her behavior was consistently altered by alcohol), 237 (reporting difficulty controlling emotion when teachers complained that her son was acting out), 292 (noting difficulty thinking clearly after learning that daughter had tumor)), and, moreover, even in such cases, there was no evidence of disorientation, physical

---

2000) (GAF score "does not have a direct correlation to the severity requirements in our mental disorders listings"), and the most recent edition of the DSM "dropped" the GAF scale, citing its lack of conceptual clarity and questionable psychological measurements in practice. Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2012).

[9] Plaintiff also reported at the hearing that since she changed treatment facilities in early 2011 she was "feel[ing] a lot better." (AR 51.) At the new facility, she was "feel[ing] more relax[ed]" and "meds helped her." (AR 533.)

[10] Plaintiff testified at the hearing that she still drank when she "fe[lt] stressed" but had reduced the quantity of alcohol consumed on those occasions from 30 beers in a 24-hour period to two 40-ounce beers. (AR 51-52.) She testified that she continued to use marijuana three times a day. (AR 52-53.) The ALJ noted that "her continuing drug and alcohol abuse reflects a failure to fully improve her mental condition by abstaining from intoxicating substances." (AR 24.) The consultative examiner also found that "[t]he claimant's functional assessment is normal if she stays away from drugs and alcohol." (AR 262.)

violence, or psychosis (AR 22). The ALJ thus found that these occasional incidents of exacerbated symptoms did not outweigh evidence that Plaintiff was generally cognitively intact and functional. (Id.) Plaintiff's treatment record thus supports the ALJ's finding that Plaintiff suffered only mild to moderate functional limitations despite Dr. Academia's assessment to the contrary. (AR 22.)

Dr. Academia's assessment was contradicted by those of state-agency psychologist Dr. Alvin Smith and consultative examining psychiatrist Dr. Sohini Parikh, both of whom assessed no more than mild limitations. (AR 262-63, 275.) Plaintiff objects that although the ALJ discounted Dr. Academia's opinion in part because of his "limited contact" with her, he gave the "most weight" to the assessment of Dr. Parikh, who saw Plaintiff only once.[11] (J. Stip. at 8; see AR 25, 257-63.) The ALJ noted, however, that Dr. Parikh performed a Complete Psychiatric Evaluation of Plaintiff – something that Dr. Academia apparently did not do (see AR 320 (noting absence of cognitive testing)) – and that Dr. Parikh's assessment of no marked functional limitations was consistent with both her own findings and the treatment record. (AR 22-23.) For instance, Dr. Parikh noted

[11] To the extent Plaintiff objects to Dr. Parikh's indication that she is "board eligible" (J. Stip. at 8 n.3), the American Board of Medical Specialties explicitly "recognizes physicians' legitimate need for a way to signal their preparations for Board Certification through the term 'Board Eligible.'" ABMS Maintenance of Certification (MOC) and Continuous Maintenance of Certification (C-MOC) Overview 8 (last updated Sept. 2013), available at http://www.namss.org/Portals/0/StateAssociations/New%20Hampshire/ABMS%20MOC_CMOC_BoardEligibility%20Overview_9_2013.pdf. A physician who is licensed to practice may do so, regardless of whether she is board certified.

that Plaintiff reported depression and low energy but denied feelings of worthlessness or hopelessness (AR 258) and, contrary to her reports to treating practitioners (see, e.g., AR 285), denied hallucinations (AR 258, 260). Dr. Parikh found that Plaintiff's responses during the Mental Status Examination belied her reported problems with concentration and memory and demonstrated logical thinking, average insight, capacity for following simple oral and written instructions, and no difficulty with decisionmaking. (AR 259-61.) Thus, the ALJ found that Dr. Parikh's findings were consistent with her examination of Plaintiff, which revealed no moderate or marked limitations. (AR 23.)

Moreover, Dr. Parikh's findings regarding Plaintiff's activities and functioning were consistent with other evidence of record, including Plaintiff's own statements. (See AR 23.) The ALJ noted that Plaintiff was responsible for a household that included five children and two pets. (Id.; see AR 43-44, 62, 259.) She reported that she was able to clean her house, complete personal care activities, and travel independently. (AR 23; see AR 259.)[12] Despite her complaints of poor anger management, she maintained good relationships with family and friends. (AR 23; see AR 259.) The ALJ thus reasonably found that Plaintiff's daily activities and social functioning – as reported to Dr. Parikh, to the ALJ, and elsewhere in the record – were consistent with Dr. Parikh's findings that Plaintiff had no

---

[12] On her disability applications, Plaintiff indicated that she did not need help with "personal care, hygiene or upkeep of a home." (AR 135.)

substantial impairment in those areas. (See AR 23); §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); cf. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (finding claimant's ability to fix meals, do laundry, do yardwork, and occasionally care for friend's child evidence of ability to work).

The ALJ further noted that Dr. Parikh's assessment was entitled to more weight because it was consistent with Plaintiff's treatment record, which, as noted above, showed that Plaintiff's impairments had only mild to moderate effects on her functioning. (AR 22.) Because Dr. Parikh's finding that Plaintiff's mental-health impairments caused no significant functional limitations was supported by both her own examination and the medical evidence as a whole, the ALJ was entitled to rely on her opinion. See §§ 404.1527(c)(4), 416.927(c)(4) (explaining that more weight should be afforded to medical opinions that are consistent with the record as a whole); Thomas, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding examining physician's opinion "alone constitutes substantial evidence, because it rests on his own independent examination of [claimant]").

Plaintiff contends that Dr. Parikh's inability to review Plaintiff's medical records makes the doctor's evaluation incomplete (J. Stip. at 8 n.4; see AR 258), but Plaintiff is

incorrect. See §§ 404.1517, 416.917 (examiner will be given "any necessary background information" (emphasis added)); Walshe v. Barnhart, 70 F. App'x 929, 931 (9th Cir. 2003) (rejecting argument that consultative examination was incomplete because doctor did not review claimant's medical records and noting Social Security regulations do not require such review). The critical issue in Sloan v. Astrue, CV 08-07479-MAN, 2009 WL 5184426, at *4 (C.D. Cal. Dec. 21, 2009), cited by Plaintiff, was the ALJ's impermissible reliance on her own lay opinion over those of the medical experts in the case. The court's mention in a footnote that the consultative examiner did not review the claimant's treatment records and thus his opinion "may not constitute substantial evidence," id. at *4 n.11, was dictum. Unlike in Sloan, here, the ALJ's RFC was consistent with that of the consultative examiner, and both were consistent with the treatment record, so that Dr. Parikh's inability to review Plaintiff's treatment records had no impact on the ALJ's ultimate disability determination. See Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006) (nonprejudicial or irrelevant mistakes harmless). Moreover, the state-agency reviewing doctor reviewed all the medical evidence and nonetheless concluded that Plaintiff's mood disorder and substance dependence caused her no more than mild functional limitations and that she was therefore "capable of a normal adult routine." (AR 275, 277.) Finally, the most recent functional assessment in the record, the September 2011 evaluation by psychiatrist Dr. Manijeh K. Nikakhtar at Mission City Community Network, specified only mild or moderate limitations, contradicting Dr. Academia's earlier,

more severe findings. (AR 538.)

The ALJ gave specific, legitimate reasons based on substantial evidence for giving greater weight to the assessment of Dr. Parikh than that of Dr. Academia. Molina, 674 F.3d at 1111; cf. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (upholding RFC determination when ALJ relied on state-agency physician's opinion over that of treating physician). Remand is not warranted.

**VI. CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[13] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: June 25, 2014

JEAN ROSENBLUTH
U.S. Magistrate Judge

[13] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."